IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CR-187 |
| | ) | |
| ABEL ENRIQUE CARRILLO COBO, | ) | Hon. Patricia Tolliver Giles |
| Defendant. | ) | |
| _____ | ) | |

<u>POSITION ON SENTENCING</u>

A kind and caring father, son, and community member, Mr. Carrillo Cobo has deep roots in this country. *See* Exhibit 1. He first came to the United States as a teenager to provide for his family and returned to continue to work hard and support his family in Guatemala. Mr. Carrillo Cobo has been in custody since June 18, 2025, Presentence Report ("PSR") at 1, for more than five months. For the reasons that follow, the defense submits that a sentence of time served is sufficient but not greater than necessary to serve the goals of sentencing.

I.  *From a humble background, Mr. Carillo Cobo came to this country seeking economic opportunities.*

Born in Nebaj, Guatemala, a rural town in a mountainous region, Mr. Carillo Cobo comes from a humble background. PSR at ¶ 45. One of six children, and the third oldest, his mother works as a homemaker and his father works in agriculture, cultivating and harvesting corn and beans. *Id.* To date, his parents who are in their late sixties still work, their economic situation is such that they will never be able to retire.

1

Along with his parents and siblings, Mr. Carillo Cobo was raised in a two-room adobe house with wood floors. PSR at ¶ 46. He had clothes and shoes, but with so many mouths to feed he often went hungry as a child. *See id*. The family ate what they could grow, which was not always enough. *Id*. Since he could walk, Mr. Carillo Cobo recalls helping his father in the fields, planting, weeding, and harvesting. *Id*. He didn't play as a child. *See id*. He went to school, he went to church, and when he had free time, he was working to help feed his family. *Id*. Raised in the Catholic church, Mr. Carillo Cobo has always found support and community through his faith. *See* Exhibit 1. To date, he remains active in his church community. *Id*.

At sixteen years of age, Mr. Carrillo Cobo left school to work full time in the fields. PSR at ¶ 47. Shortly thereafter, when he was still a teenager, he first came to this country seeking greater economic opportunities to financially support his family. *Id*.

II.  *Mr. Carrillo Cobo's presence in the United States.*

Now almost 40 years old, *see* PSR at 1, Mr. Carrillo Cobo has spent approximately half of his life and most of his adult years in the United States. When he came as a teenager to this country, he immediately began to work to send money home to his family. And for decades he has lived and worked in Virginia, predominately in construction, sending money to Guatemala, and as the year passed and he had his own family, supporting them as well.

Mr. Carillo Cobo has a partner here, who works at a bakery, and an almost five-year-old son. PSR at ¶ 49. He is devoted to his family and has worked hard to

2

support them. *See* Exhibit 1. He is also an active community member. *See* Exhibit 1. For example, Mr. Carillo Cobo helped organize a resource center that assists community members find employment, spending his evenings refurnishing the office space, free of charge. *Id*. As a friend of fifteen years and revered wrote in his letter to the Court, "Enrique is honest and trustworthy, generous with his time and attention to his family, friends and people in the community." Exhibit 1.

Mr. Carillo Cobo's presence in the United States was never motivated by nefarious intensions. He only wished to work to support his family in Guatemala, and later his own children and partner. He cannot, however, support his family, either economically or emotionally, from jail and understands that his future now lays in Guatemala. He has taken responsibility for his actions and understands that he cannot return to the United States, unless he has legal permission to do so. He has already begun to plan his return to Guatemala.

  III.   *The sentencing factors support a sentence of time served.*

Mr. Carillo Cobo understands that he committed a crime by returning to the United States without permission. However, here a sentence of time served, accounting for the five and half months he has spent in custody, is a sentence that is "sufficient, but not greater than necessary[.]" 18 U.S. Code § 3553.

First, a time-served sentence serves the goals of just punishment, retribution, and deterrence. For his last illegal reentry conviction, Mr. Carillo Cobo served a 77-day. PSR at ¶ 34. By the time he reaches sentencing, Mr. Carillo Cobo will have served over five months, approximately 169 days. This is more than double the last

3

sentence he served, an increase in punishment that serves the goals of retribution, deterrence and the punitive goals of sentencing. And, while in the custody of the Bureau of Prisons ("BOP") Mr. Carillo Cobo would be ineligible or less able to access many of the services BOP offers. As a "deportable alien" Mr. Carrillo Cobo will be barred from assignment to minimum security prisons. Federal Bureau of Prisons Program Statement 5100.08: Inmate Security Designation and Custody Classification, Ch.5, p.9. (Sept. 12, 2006).[1] For the same reason, he will only be eligible to participate in occupational education programs if BOP "resources permit after meeting the needs of other eligible inmates," which is almost certain not to occur. Federal Bureau of Prisons, Program Statement 5353.01: Occupational Education Programs, at 3 (Dec. 17, 2003).[2] Meaning, a lengthy prison sentence will not serve rehabilitative goals.

Second, there is no need to protect the community from Mr. Carrillo Cobo, who as outlined above is a valuable asset to his community. The defense is cognizant that Mr. Carrillo Cobo has a criminal history that will weigh into this Courts sentencing analysis. That said, his criminal history is overrepresented in the applicable guideline range. The driving force underlying the recommended range in this case is a single prior felony conviction for illegal reentry. PSR at ¶ 34. This single prior felony is accounted for in Mr. Carrillo Cobo's offense criminal history category ("CHC"), and a

---

[1] Available at: Program Statement 5100.08, Inmate Security Designation and Custody Classification (bop.gov)
[2] Available at: Program Statement 5353.01, Occupational Education Programs (bop.gov)

4

four-point enhancement to his base offense level, creating an inflated guideline range that overrepresents the harm caused by Mr. Carillo Cobo's actions. Further, Mr. Carillo Cobo's only other criminal history appoints accrue from a remote in time driving while intoxicated, where the underlying conduct is over twelve years old, PSR at ¶ 33, and a more recent carrying concealed weapon conviction that only resulted in a fine. PSR at ¶ 35. This is so because the "weapon" Mr. Carillo Cobo had in his car was a machete that he used to cut brush at work. Though Mr. Carillo Cobo entered a plea in that case and agreed to pay a fine, he had no criminal intent in carrying a work tool in his car.[3] Mr. Carrillo is a kind, hard-working person, and as applied to him the guidelines in this case are overly harsh.

Third, as an immigration detainer has been lodged against Mr. Carillo Cobo any sentence this Court imposes will be followed by what could be a lengthy period of administrative detention. *See* PSR at page 1. Even though immigration custody is civil detention rather than criminal incarceration, the "similarities" between the two "are too strong to ignore." *United States v. Estrada-Mederos,* 784 F.3d 1086, 1091 (7th Cir. 2015) (internal citations and quotations omitted))(reversing the district court for failing to consider defendants argument for a variant sentence because of his uncredited immigration detention). That is to say, any punishment Mr. Carillo Cobo

---

[3] As per the police reports provided in discovery, Mr. Carrillo Cobo was stopped for making an improper turn, and during the stop gave officers voluntary consent to search his vehicle. After officers found the machete "Able admitted it was [his] and that he uses if for work."

receives from this Court will be followed by further incarceration serving the goals of deterrence, retribution, and just punishment.

Finally, a sentence within the guideline range would create unwarranted sentencing disparities as several comparators sentenced before this Court so demonstrate. For example, in *United States v. Velis-Rivera*, this Court issued a time served sentence accounting for the approximate five months the defendant spent in custody, where the defendant had two prior illegal entry convictions, and per the government was a "documented member of MS-13." ECF No. 21 & 32; *see also United States v. Rivas*, 23-cr-39-PTG (where this court issued a time served sentence, 20 days, to a defendant who had prior convictions for illegal entry as well as a DWI and a pending case alleging assault and battery on family member.).

IV.   *Conclusion.*

Mr. Carillo Cobo has his parents and siblings in Guatemala, who will welcome him. *See* PSR at ¶ 45. He has a home to return to and understands he cannot return to this country without permission to do so. For all the above stated reasons, the defense respectfully requests a sentence of time served.

Date: November 25, 2025.

6

Respectfully Submitted,

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
VA Bar No.: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org